[L.A. No. 31275. Dec. 18, 1980.]

In re MICHAEL B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL B., Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Handy Horiye for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth, Keith I. Motley, Richard D. Garske and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RICHARDSON, J.**—We granted a hearing in this case in order to resolve a conflict between Court of Appeal opinions in this and earlier cases. (Compare *In re Richard W.* (1979) 91 Cal.App.3d 960 [155 Cal.Rptr. 11], with *In re Ruben M.* (1979) 96 Cal.App.3d 690 [158 Cal.Rptr. 197].) After an independent study of the issue, we have concluded that the thoughtful opinion of Justice Wiener for the Court of Appeal, Fourth Appellate District, in this case correctly treats the issues and that we should adopt it as our own. That opinion, with appropriate deletions and additions,* is as follows:

Michael B. (Michael) appeals from a dispositional order of the juvenile court continuing his status as a ward (Welf. & Inst. Code, §§ 602, 775; all statutory references are to the Welf. & Inst. Code unless otherwise indicated) and committing him to the [ ] Youth Authority (YA). Although the only petition filed in this proceeding was pursuant to section 602, Michael's YA commitment was increased by an additional two years and four months for previously sustained offenses. [ ] [Under the circumstances of this case, the failure of the district attorney to provide prior notice of his intent to seek aggregation of the terms of confinement allowable under prior sustained section 602 petitions] requires reversal.

### Procedural and Factual Background

This appeal concerns Michael's most recent petition filed September 19, 1978, which alleged he came within the provisions of section 602 because he committed forgery (Pen. Code, § 470; count I) and disobeyed a court order (*id.*, § 166, subd. 4; count II). On September 29, 1978, he admitted the allegations in count I; count II was dismissed. The dispositional hearing was held immediately following his admission. He was committed to YA for a term of five years and four months, representing three years for the forgery and two years and four months aggregated for previously sustained offenses alleged within petitions dated January 26, 1977, and February 23, 1977.[1]

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions by us. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

[1] In light of *In re Eric J.* (1979) 25 Cal.3d 522, 536-537 [159 Cal.Rptr. 317, 601 P.2d 549], the juvenile court erred in computing Michael's "aggregate maximum term"

The relevant portion of the minor's prior record is as follows: A petition filed January 26, 1977, charged the minor with four counts of vehicle theft (Veh. Code, § 10851). A true finding was made on February 17, 1977, on one count and the minor was declared a ward under section 602. He was released on probation to his mother.

On February 23, 1977, another petition was filed alleging that on February 19, 1977, Michael was involved in a hit and run accident (Veh. Code, § 20002, subd. (a)); had stolen a vehicle (*id.*, § 10851); and had driven a vehicle without a license (*id.*, § 12500, subd. (a)). The allegations were admitted on February 24, 1977, and true findings were made that same date. As a ward of the court, he was placed in the San Diego County Juvenile Ranch facilities until released on May 20, 1977.

*The Minor Was Not Given Adequate Notice of the*
*Court's Intention to Aggregate His Maximum Term of*
*Confinement Based Upon His Prior Offenses*

█ The minor claims the failure to file a supplemental petition under section 777 prevents the court from [] [computing] the maximum period of confinement on the basis of [aggregated terms for] prior offenses.

Section 777 requires the filing of a supplemental petition to change or modify a prior disposition [by removing a minor from the physical custody of his parents or by placing him in more restrictive custody. It does not make express reference to modifications of previous orders to increase the permissible period of physical confinement. Pursuant to section 777] the minor must be afforded notice of the intended change [in custody], as well as the time and place of the hearing, and the petition must contain a concise statement of facts in support of the conclusion the minor's previous placement has been rehabilitatively ineffective. (*In re Ruben M., supra,* 96 Cal.App.3d 690, 696; *In re Reynaldo R.* (1978) 86 Cal.App.3d 250, 253-255 [150 Cal.Rptr. 71]; *In re Glenn K.* (1977) 74 Cal.App.3d 342, 345-346 [141 Cal.Rptr. 486]; §§ 775, 776, 777.) Before the previous dispositional order may be modified, the court must make an express finding the previous order in

by adding six months respectively for each misdemeanor offense (hit and run—Veh. Code, § 20002, subd. (a); driving without a license—Veh. Code, § 12500, subd. (a)) instead of two months or one-third of each six-month maximum sentence prescribed by law. Accordingly, Michael's maximum term of commitment should have been four years and eight months.

fact has been rehabilitatively ineffective. (*In re Reynaldo R., supra*, 86 Cal.App.3d at p. 255; *In re Denise C.* (1975) 45 Cal.App.3d 761, 766-767 [119 Cal.Rptr. 735].)[2]

■ After a new petition is sustained under section 602, [on the other hand,] the court may consider the juvenile's entire record before exercising its discretion at the dispositional hearing [and may rely on prior sustained section 602 petitions in determining the proper disposition and maximum period of confinement. (*In re Ruben M., supra*, 96 Cal.App. 3d at p. 696; see *In re John G.* (1977) 72 Cal.App.3d 242, 245-246 [139 Cal.Rptr. 849].) Section 726, which permits aggregation of terms in computing that period, expressly authorizes aggregation on the basis of prior sustained section 602 petitions but does not sanction consideration of prior section 777 petitions for this purpose. A practice has developed, therefore, of filing new section 602 petitions, rather than section 777 supplemental petitions, to charge new offenses even when the minor is already a section 602 ward. (Cf., *In re Arthur N.* (1976) 16 Cal.3d 226 [127 Cal.Rptr. 641, 545 P.2d 1345].) This practice is not contrary to law. Although section 777 recites that a "supplemental petition" is required in order to change or modify a previous order by removing the minor from his parents' custody or by directing his commitment to the Youth Authority, a section 777 petition is not the exclusive method of initiating proceedings calling for such a change or modification. As stated in a recent case it is "clear that the proposers of section 777 did not contemplate that that section must, necessarily, be utilized in cases...where a different and more onerous disposition is to be based on a new criminal offense." (*In re John G., supra*, 72 Cal. App.3d 242, 245.) Thus, section 726 authorizes the court in a section 602 proceeding to "aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602...."

We have decided, however, that] where the prior offenses are to be considered to aggregate the maximum term to extend it beyond that which could be imposed for the new offense, due process requires notice of the juvenile court's intention in order to provide the minor with a meaningful opportunity to rebut any derogatory material within its prior record. (*In re Robert S.* (1979) 92 Cal.App.3d 355, 362 [154 Cal. Rptr. 832]; *In re Aaron N.* (1977) 70 Cal.App.3d 931, 939-941 [139 Cal.Rptr 258].) Further, in compliance with the *Boykin-Tahl* protec-

---

[2]The trial court's failure to do so here further mandates a limited reversal.

tions afforded a minor (*In re Ronald E.* (1977) 19 Cal.3d 315, 321-323 [137 Cal.Rptr. 781, 562 P.2d 684]), the legislative intent embodied within the Juvenile Court Law and the pertinent California Rules of Court mandate the advising of a minor of the possible consequences of the pending petition, including generally the possibility of aggregation and specifically "the maximum period of physical confinement, at the detention or jurisdictional hearing, or at some point before an admission is accepted or a contested jurisdictional hearing commences." (*In re Richard W., supra,* 91 Cal.App.3d 960, 978; §§ 633, 700, 776, 777 and Cal. Rules of Court, rules 1324 (a)(3), 1353(a), 1354(e)(4).) Thus, we conclude [] [that a petition under section 602 must contain notice of the intent to rely upon previous sustained petitions under section 602, in order to aggregate the maximum period of confinement on the basis of those petitions. (See *In re Richard W., supra,* 91 Cal.App.3d at p. 978.) To the extent contrary to this conclusion, *In re Ruben M., supra,* 96 Cal.App.3d at pages 697-698, is hereby disapproved. Absent the filing of a petition containing such notice, the court is limited to the maximum period of confinement of the new offense(s) set forth in the section 602 petition.

It has been suggested that this procedure would require the filing of both a section 777 supplemental petition and a section 602 petition when a new offense has been committed and thereby necessitate "two hearings," resulting in a "duplication of effort," as well as "confusion or even inconsistent results." (*In re Ruben M., supra,* 96 Cal.App.3d 690, 700.) Yet no compelling reason appears why separate petitions or duplicative hearings should be required under the rule we announce. So long as the minor is given the requisite *notice* of the intent to rely upon the minor's prior offense or offenses or upon the ineffectiveness of prior dispositions in order to enhance the maximum period of YA commitment for the current offense, the issues may be presented in a single unitary petition which contains the requisite allegations, and may be disposed of in the course of a single proceeding otherwise conforming to law. (See *In re Reynaldo R., supra,* 86 Cal.App.3d 250, 254-255, involving use of a single petition filed under §§ 602 and 777; see also, *In re John G., supra,* 72 Cal.App.3d 242, 245; *In re Aaron N., supra,* 70 Cal.App.3d 931, 941.)

The filing of a unitary petition satisfies the essential demands of due process. (See *In re Arthur N., supra,* 16 Cal.3d 226, 233.) Although the petition would include a reference to the minor's prior offenses, that disclosure violates no constitutional or statutory right. A similar disclo-

sure necessarily occurs whenever a change in disposition is sought with respect to a minor who was previously adjudicated a juvenile court ward under section 602. The inclusion of allegations regarding the necessity of a change in placement is expressly sanctioned by section 777. Moreover, in adult criminal proceedings, the pleadings frequently contain allegations of prior convictions for enhancement or aggravation purposes. (See Pen. Code, § 969 et seq.)]

Here, Michael was denied due process. He was not given adequate notice that his maximum term of confinement could be aggregated on the basis of his prior offenses. Before his admission, he was told by the trial court that based upon his present charge and the background information provided by the probation report, he could be committed to YA until his 23d birthday. However, although this admonishment exaggerated the severity of his potential maximum term, since the estimate was excessive by approximately 22 months, it did not explain the mechanical consequences of his plea. The brevity of the statement was its flaw, as Michael was not told of the effect of his plea upon his previously sustained section 602 petitions. The shorthand, ambiguous admonishment had the effect of being no more than an attempt to advise the minor of his potential maximum term of confinement for the present charge alone. Michael was deprived of notice of the possibility of aggregation based upon his prior offenses, adequate time to prepare his defense, and a meaningful opportunity to be heard to rebut any derogatory material relating to his prior record. Due process mandates the remanding of this matter to the juvenile court "for redetermination of the maximum permissible term of physical confinement by means of procedures which give fair notice to the minor and an opportunity to be heard." (*In re Robert S., supra*, 92 Cal.App.3d at p. 363; *In re Samuel C.* (1977) 74 Cal.App.3d 351, 360 [141 Cal.Rptr. 431].)

Michael has not, however, carried his burden of establishing prejudice resulting from the improper admonishment as it pertains to the taking of his admission to the truth of the allegations within the forgery count. Since the record sheds no further light upon this issue, we conclude it is not reasonably probable that had the court properly admonished Michael, he would have been persuaded to deny the truth of the allegations he ultimately admitted. (*In re Ronald E., supra*, 19 Cal.3d at pp. 325-326; *In re Richard W., supra*, 91 Cal.App.3d at p. 980; *In re Jimmy M.* (1979) 93 Cal.App.3d 369, 373-374 [155 Cal. Rptr. 534]; *People v. Wagoner* (1979) 89 Cal.App.3d 605, 610-611

[152 Cal.Rptr. 639]; *Ganyo* v. *Municipal Court* (1978) 80 Cal.App.3d 522, 530 [145 Cal.Rptr. 636].)

■ [Michael complains that the trial court failed to enter a finding that there was a factual basis for his admission of the forgery allegations. (See Cal. Rules of Court, rule 1354(e)(6).) On the record before us, however, we find no reasonable likelihood of prejudice to Michael from the omission. The charge involved knowingly forging his mother's name to a $50 check and attempting to cash it. (Pen. Code, § 470.) A probation report set forth additional details of the offense. At the hearing, the court read the charging allegations to Michael *in his mother's presence* and he admitted the forgery. No contrary evidence was introduced. Under the circumstances, the trial court unquestionably would have found that there was a factual basis for Michael's admission.] We affirm the true finding as to count I.

### *The Imposition of Consecutive Terms Was Proper*

■ Michael urges consecutive terms for Vehicle Code section 10851 (vehicle theft) and Vehicle Code section 12500 (driving without a license) constitute double punishment prohibited by Penal Code section 654.[3]

A similar contention was rejected [by us as follows] []: "[S]ection 654 of the Penal Code proscribes multiple punishment for a single 'act or omission which is made punishable' by different statutes, i.e., a single *criminal* act or omission. Since the mere act of driving is made punishable by no statute, it is not the type of act or omission referred to in section 654. The acts 'made punishable' which this petitioner committed were (1) driving with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654." (*In re Hayes* (1969) 70 Cal.2d 604, 611 [75 Cal.Rptr. 790, 451 P.2d 430]; see *Peo-*

---

[3]Penal Code section 654 does apply to juvenile court sentencing, since section 726 requires aggregate confinement in accordance with Penal Code section 1170, subdivision (a), which, in turn, specifies such consecutive sentencing is subject to Penal Code section 654. *In re Aaron N., supra,* 70 Cal.App.3d at page 940, and *In re Benny G.* (1972) 24 Cal.App.3d 371, 375, footnote 3 [101 Cal.Rptr. 28], holding to the contrary, are not controlling since they predate the 1977 amendment to section 726 which implemented the foregoing requirement.

*ple* v. *Perez* (1979) 23 Cal.3d 545, 551-552 [153 Cal.Rptr. 40, 591 P.2d 63].)[4] (End of Court of Appeal opinion.)

### Disposition

The dispositional order pertaining to the determination of the aggregate maximum permissible term of confinement is reversed for proceedings consistent with this opinion to permit a redetermination upon notice with the full opportunity for the minor to be heard. In all other respects, the order is affirmed.

Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—Today's majority opinion stands the concept of due process of law on its head. A requirement of due process, intended to protect an individual, is used in the best *Alice in Wonderland* fashion to *restrict* that individual's statutorily defined rights. Unfortunately, the path the majority take to reach this goal is strewn with the remnants of what used to be called due process of law.[1]

### I.

When a section 602 petition is sustained in juvenile court,[2] the judge must make two determinations. First, the appropriate disposition or "treatment" of the minor must be determined. Then, if the disposition selected results in the removal of the minor from the custody of his parent or guardian, the judge must "specify that the minor may not be held

---

[4] It is unnecessary in the context of our holding to discuss Michael's remaining contentions. Due to the lapse of time, however, it is necessary upon remand for the probation officer to prepare a current social study for the dispositional hearing in accordance with section 280, California Rules of Court, rules 1302(b)(1) and 1371(b) and (d), and *Holt* v. *Superior Court* (1960) 186 Cal.App.2d 524, 527 [9 Cal.Rptr. 353].

[1] For the first time in this court's history, the majority opinion uses the concept of an individual's constitutional right to due process of law to restrict that same individual's statutory rights. Since I agree that the case should be remanded, I concur in that portion of the majority opinion which reverses the lower court.

[2] A petition under section 602 of the Welfare and Institutions Code is filed when the juvenile court is asked to assume jurisdiction over a "person who is under the age of 18 years when he violates any law ... or any ordinance ... defining crime ...."

Hereinafter, all statutory references are to the Welfare and Institutions Code unless expressly stated otherwise.

in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726.)

Complexities may arise if the minor has had section 602 petitions sustained prior to the sustaining of the current petition. In this event, it has been held that the juvenile court may consider the prior petitions in determining the appropriate disposition of the minor's current case. (See *In re Reynaldo R.* (1978) 86 Cal.App.3d 250 [150 Cal.Rptr. 71].) In this case, appellant, Michael B., does not dispute that the juvenile court judge could consider his prior sustained petitions in reaching the decision to commit him to the Youth Authority.

Having made this decision, the juvenile court was then obligated to set a "maximum term of imprisonment." (§ 726.) In fixing this term, a judge is authorized to use the terms prescribed in the Penal Code for the offenses found to be true in past and present sustained petitions. Thus, the question arises whether this use of prior sustained petitions requires some form of notice to the minor that such aggregation of prior and present petitions may occur.

Appellant contends that the Legislature has required such notice in the form of a supplemental petition. Section 777 dictates that a supplemental petition be filed before the juvenile court may make any "order changing or modifying a previous order by directing commitment to the Youth Authority...." Since the use of previously sustained petitions to fix the maximum term of imprisonment in a new case amounts to a "changing or modifying" of the orders in those prior cases, a supplemental petition would seem to be a legislatively mandated prerequisite to such use.[3] Since no section 777 petition was filed below in connection with the juvenile proceedings against appellant, that court's order setting his maximum term of imprisonment must be reversed.

---

[3]The Court of Appeal in *In re Ruben M.* (1979) 96 Cal.App.3d 690, 697-698 [158 Cal.Rptr. 197], came to a different conclusion based in large part upon a comment to proposed section 777 by the Special Study Commission on Juvenile Justice. However, *Ruben M.*'s reliance on this comment is misplaced, for the version of section 777 which the special study commission proposed was substantially altered by the Legislature prior to enactment. (See Sen. Amends. to Sen. Bill No. 332 (1961 Reg. Sess.) Feb. 23, 1961, and Mar. 17, 1961.)

Of particular note is the February 23 amendment, which deleted subdivision (d) of proposed section 777. The deleted subdivision would have provided that "[n]o [section 777] modification of a previous order shall be made upon the ground that a minor has

The majority eschew this straightforward analysis in favor of a constitutional approach, although their reasons for doing so are not immediately apparent. At one point they seem to indicate their belief that section 777 was inapplicable to the proceedings against appellant. (Maj. opn., *ante*, at pp. 552-553.) Then, on other pages they appear to acknowledge that the provisions of section 777 should have been followed below. Thus, they expressly hold that a "limited reversal" is necessary in this case because the juvenile court failed to comply with section 777's requirement of "an express finding [that] the previous order in fact has been rehabilitatively ineffective." (Maj. opn., *ante*, pp. 552-553, fn. 2, and accompanying text.) Moreover, they must acknowledge that the order now at issue did "change or modify" the orders in the prior cases since they explicitly recognize "the effect of [appellant's] plea upon his previously sustained section 602 petitions." (Maj. opn., *ante*, at p. 555.)[4]

In the end, however, it appears that the majority choose the constitutional rather than the statutory route to a notice requirement because it allows them to "announce" their own rule and thereby implement a policy which they believe is superior to that which would result by strict adherence to section 777. They are concerned that the filing of a section 777 supplemental petition in conjunction with a section 602 petition would "necessitate two hearings, resulting in a duplication of effort, as well as confusion or even inconsistent results." (Maj. opn., *ante*, at p. 554, quotation marks in original deleted.) They also see "no compelling reason . . . why separate petitions . . . should be required . . . ." (*Ibid.*)

Their concern about "duplicative hearings" (*ibid.*) is unwarranted if not misleading. While section 777 requires that a separate supplemental

since committed a crime. In such event a new petition must be filed . . . ." It was this deleted language which would have implemented the portion of the special study commission's report on which *Ruben M.* relied.

[4]This confusion in the majority opinion's view of section 777 is not in any way attributable to the Court of Appeal which previously considered this case. While purporting to "adopt" the opinion of the Court of Appeal, today's majority actually have deleted the central portions of that opinion and replaced them with language substantially opposed to that court's reasoning.

The Court of Appeal held in this case that "[t]he sole statutory method permitting aggregation under section 726 is the *filing of a supplemental petition as required by section 777*." (Italics added.) It was this "failure to comply with section 777" which required reversal, according to the Court of Appeal. Today's majority opinion adopts that court's opinion on the basis that it "correctly treats the issues," yet the distinguished members of the Court of Appeal will, I suspect, have difficulty recognizing their "correct treatment" in this court's decision.

*petition* be filed if prior sustained petitions are to be used to increase the maximum term of imprisonment for a new offense, it does not require that the *court hearing* on this use of prior petitions be separate from the dispositional hearing on the new offense. Obviously, both petitions may and should be heard together, as the Legislature undoubtedly intended.

The majority's further concern—i.e., that they see "no compelling reason" for the filing of separate petitions—reflects a fundamental misunderstanding of the role of this court. This court may not refuse to follow a statutory provision simply because, in our view, the Legislature had "no compelling reason" for enacting it. The fact remains that the Legislature *has* enacted it, believing it to be a valuable and appropriate protection for minors. Unless the provision is unconstitutional—and no one has suggested that a supplemental petition requirement is unconstitutional—this court is duty bound to honor the Legislature's wishes regardless of our own personal views. It is disingenuous to cloak ourselves in the trappings of due process so we can dispense with the valid legislative notice requirement of section 777. Due process principles were enacted to *protect* persons in appellant's situation, and it is a perversion of these principles to use them as a means of *limiting* his rights.

## II.

There is a second serious error in the majority opinion. Rule 1354(e) of the California Rules of Court provides in relevant part that upon an admission by a minor of the truth of section 602 allegations against him, "the court shall make findings as to each of the following, noted in the minutes of the court:...(6) That there is a factual basis for the minor's admission; [and] (7) That the allegations of the petition as admitted are true as alleged...."

There was no compliance with these rules in the juvenile court proceedings below. Appellant was merely asked whether he "understood" the petition which had been read to him, and he "admitted the truth of Count I." This record is insufficient to comply with rule 1354(e). In addressing this issue, the majority opinion erroneously finds a factual basis for appellant's admission because appellant was charged with and did admit a crime. The majority have totally confused two separate concepts. I must dissent on this basis as well.

Finally, the majority's resolution of the multiple punishment issue is contrary to views expressed by former Chief Justice Traynor in *In re Hayes* (1969) 70 Cal.2d 604, 611-617 [75 Cal.Rptr. 790, 451 P.2d 430] (dis. opn.). Since I agree with the former Chief Justice's views on this issue, I again must voice my strong dissent.